(Decided 30th June, 1881.)

---

ASBURY WORTHINGTON, WILLIAM N. WORTHINGTON, and others *vs.* RICHARD J. GITTINGS and JOSHUA F. C. WORTHINGTON, Admr's c. t. a. of NOAH WORTHINGTON of J., and others.

*Caveat to a Will—Construction of section 320, of Article 93, of the Code—Remedy in case of Caveat obtained by Fraud or collusion.*

Section 320, of Article 93, of the Code, provides, that if a will has been admitted to probate *without contest,* and letters have been granted, and any person shall file a petition to the Court praying that the case may be again examined and heard, "and the Court on hearing both sides—that is to say, the petitioners and the grantee of such letters—shall decide against the probate, the letters aforesaid shall be revoked, and the power of the party under the letters shall cease." HELD:

That the plain implication from this is, if there has been a *contest* in regard to the validity of the will, and that contest has been decided in favor of the validity of the will, and the will has been, after such contest, admitted to probate, and letters granted, the Orphans' Court is without further power or jurisdiction to hear or decide the question of the validity of the will. They cannot be repeated though at the instance of different parties.

The order of the Orphans' Court admitting the will to probate, after contest involving its validity, and the granting of letters testamentary thereon, so far as the personal estate is concerned, is final and conclusive upon all persons.

Worthington, *et al. vs.* Gittings and Worthington, *et al.*

As to the real estate devised, while the probate thus taken by the Orphans' Court is only *prima facie* evidence of such will, (Code, Art. 93, sec. 323,) yet so far as the Orphans' Court and its jurisdiction are concerned, the probate taken after contest is a finality, and cannot be made the subject of repeated contests in that jurisdiction.

The fact that new caveators were not parties to the proceedings had upon former caveats to the will, can afford no ground for allowing issues to be taken, or proofs to be offered, affecting the validity of the will, and the probate thereof. But parties interested may impeach the probate for fraud and collusion in obtaining it, and upon making it clearly to appear that it was so obtained, have it revoked.

In order however, to procure such revocation it must be by direct application for that purpose, and the fraud or collusion, with all the particulars, must be distinctly charged, as also the manner in which the Court was misled or imposed on ; and such allegations must be fully and clearly supported by proof.

The application must moreover be made within a reasonable time after the discovery of the facts that are supposed to establish the fraud ; for if there be any unnecessary and unreasonable delay in making the application, the right to make it will be considered as waived.

Where probate has passed and letters have been granted after contest involving the validity of a will, no further proceeding in the Orphans' Court touching that question can be had, unless the probate were first revoked for fraud or collusion upon proper proceeding taken for that purpose.

APPEAL from the Orphans' Court of Baltimore County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, ALVEY, IRVING and MAGRUDER, J.

*John T. B. Dorsey,* for the appellants.

*D. G. McIntosh,* and *Arthur W. Machen,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

To the will of Noah Worthington, of John, who died January, 1879, there were two caveats filed, both after the will had been proved in common form by the three subscribing witnesses thereto. The first of these caveats was filed by Joshua F. C. Worthington, one of the executors named in the will, who alleged that certain words, making James L. Ridgely, Jr., a residuary legatee and devisee of the deceased, had been fraudulently inserted into the text of the will after its execution. The other caveat was filed by Dye W. Worthington and Otis A. Worthington, two of the heirs-at-law of the deceased, assailing the alleged will of the deceased, upon the ground that it was not executed in manner and form required by law ; that at the time of its execution the deceased was not of sound and disposing mind ; that it was procured by undue influence and undue importunity ; by misrepresentation, fraud and deceit. Answers were filed to both petitions and caveats ; and thereupon eleven issues were formed and transmitted by the Orphans' Court of Baltimore County to the Circuit Court for trial by jury. See as to these issues, *Worthington vs. Ridgely,* 52 *Md.,* 349. The first, second, third, tenth and eleventh of these issues, framed upon the caveat of Joshua F. C. Worthington, as to the alleged alteration of the will, were dismissed by the parties at whose instance they were framed, after the jury were sworn, but before verdict rendered. The other six issues, framed on the caveat and allegations of Dye W. Worthington and Otis A. Worthington, were in substance and form as follows :

1st. Whether the will was duly executed and attested, as required by law ?

2nd. Whether the will was executed by the deceased, when he was of sound and disposing mind, and capable of executing a valid deed or contract ?

3rd. Whether the will was executed by the deceased under the influence of suggestions, importunities, or mis-

representations, when his mind, by reason of disease, &c. was unable to comprehend and resist the same?

4th. Whether the will was procured by undue influences exercised over the deceased?

5th. Whether the will was procured by fraud, fraudulent devices, deceits or misrepresentations, practiced upon the deceased?

6th. Whether the will, and the execution thereof, were the free and voluntary acts of the deceased, with full knowledge of the contents of the paper, without undue influence thereto by any person whatever?

Upon these issues trial was had, in the Court of Common Pleas of the City of Baltimore, to which the case had been removed, and, on the 5th of March, 1880, a verdict was rendered in favor of the caveatees as to each of such issues. The verdict thus rendered was certified to the Orphans' Court, and on the 17th of March, 1880, that Court, on the findings of the jury so certified, made an order admitting the will to probate. And upon the renunciation of the executors named in the will, letters of administration, with the will annexed, were granted, and the administration of the estate was proceeded with.

On the 8th of October, 1880, the present appellants, claiming to be the children and heirs-at-law of a deceased brother of the testator, filed their petition and caveat in the Orphans' Court to the will that had been admitted to probate by the order of the 17th of March previous. These petitioners were residents of the State of Missouri, and were not made parties to the proceedings on the former caveats, either by name, citation or publication. The grounds of their caveat to the will are substantially the same, and none other, that were taken by the previous caveat of Dye W. Worthington and Otis A. Worthington; and the questions or issues embraced in the allegations, and which would be required to be framed thereon, are substantially the same, and none other, as those that

had been framed, and tried by the jury, and upon the finding in respect to which the will had been admitted to probate. And though they state that the will had been admitted to probate, they make no reference whatever in their petition to the previous caveats and the proceedings thereon. They pray that the right to admission of the paper, purporting to be the will of the deceased, to probate, "be again examined and heard, and a plenary proceeding be had in this (the Orphans') Court, whereby the validity of such pretended will may be contested and determined, the probate set aside, and letters thereon revoked, and all questions touching the execution, validity and testamentary character thereof, be fully determined, and that probate thereof be refused, and the same adjudged not to be the last will and testament of the said Noah Worthington, deceased."

To this petition, the administrators, with the will annexed, and James L. Ridgely, Jr., Dye W. Worthington and Otis A. Worthington, are made parties defendants. They answered the petition; the administrators, and Ridgely, and Otis A. Worthington, denying the allegations of the petitioners, and setting up and relying upon the former plenary proceedings, and the probate had thereon, as in all respects final and conclusive as against all parties concerned, including the petitioners. Dye W. Worthington filed a separate answer, in which he reiterates his former charges of incompetency, undue influence, and fraud practiced upon the deceased, and says that he was induced to abandon the contest on his caveat for the consideration of $1000.

The appellants then filed what they call a replication to the answers of the defendants; and in this replication they utterly deny the validity of the plenary proceedings, and the alleged finding by the jury thereon, set up by the defendants. They allege that what purports to be the finding by the jury was procured by agreement and

fraudulent concert between the parties to the proceedings: That there was no actual *bona fide* trial of the issues; but that the caveators were bought off; and that the verdict was agreed to and allowed to be rendered as mere form. They allege that, not being parties to those proceedings, they are in no manner bound thereby, and that the same are wholly void and without effect so far as they, the appellants, are concerned. They then pray that their caveat may be heard, and that issues may be framed, to be sent to a Court of law for trial, whereby all the circumstances of the preparation, execution, and probate of the alleged will may be re-opened, heard and determined.

Upon the case thus presented, the question is, whether the appellants be entitled to have the issues framed as prayed. The appellees moved the Orphans' Court to dismiss the caveat of the appellants, and it was accordingly dismissed; and it is from the order of dismissal that this appeal is taken.

The petition of the appellants was filed under section 320 of Art. 93 of the Code. That section provides that if a will has been admitted to probate *without contest,* and letters have been granted, "and any person shall file such petition, and the Court on hearing both sides—that is to say, the petitioner and the grantee of such letters—shall decide against the probate, the letters aforesaid shall be revoked, and the power of the party under the letters shall cease." The plain implication from this is, if there has been a *contest* in regard to the validity of the will, and that contest has been decided in favor of the validity of the will, and the will has been, after such contest, admitted to probate, and letters granted, the Orphans' Court is without further power or jurisdiction to hear or decide the question of the validity of the will. The same questions having been once raised and decided in regard to the validity of the will, they cannot be repeated, though at the instance of different parties. In this case, the peti-

tion of the appellants was filed, as we have seen, after the will was admitted to probate upon contest as to its validity, and after the grant of letters of administration; and upon the plain construction of the statute, as well as upon the reason and policy of the matter, the question, as to the validity of the will, was no longer open in the Orphans' Court.

In accordance with this construction have been the decisions of this Court as to the effect of issues framed, tried, and certified, under sections 249 and 250 of Article 93 of the Code. In the case of *Pegg vs. Warford*, 4 *Md.*, 385, it was held that though a party in interest, even after the finding of a jury upon issues, can require another issue or issues in regard to *facts not covered* by the issues pronounced upon, *if the final judgment* on the paper purporting to be a will has *not been rendered;* yet no issue can be granted which substantially embraces the same question that has been so pronounced upon;—the finding of the jury being binding and conclusive upon all persons, whether actual parties or otherwise. In the opinion of the Court it is said: "No issue can be granted which substantially embraces the same question that has been pronounced upon by the jury, for their finding in regard to it is binding and conclusive on the whole world. Nor, for the same reason, can the same issue be granted on the several applications of different parties, unless they be joined as plaintiffs or defendants, so as to produce by the trial but one and the same verdict. Were different parties permitted to propound the same question to different juries, there might, and most probably would be, different verdicts, and, as an inevitable consequence, under the Act of 1798, different judgments in the Orphans' Court on the same matter." 4 *Md.*, 394.

The order of the Orphans' Court admitting the will to probate, after contest involving its validity, and the granting of letters testamentary or of administration thereon,

so far as the personal estate is concerned, is final and conclusive upon all persons, because it is founded upon a proceeding *in rem,* in which all persons interested may appear and be heard upon the question ; and it is the judgment of a Court of competent jurisdiction directly upon the subject-matter in controversy. *Warford vs. Colvin,* 14 *Md.,* 556; 2 *Greenl. Ev., sec.* 672; 2 *Tayl. Ev., sec.* 1488, *p.* 1435. And as to the real estate devised, while the probate thus taken by the Orphans' Court is only *prima facie* evidence of such will, (*Code, Art.* 93, *sec.* 323,) yet, so far as the Orphans' Court and its jurisdiction are concerned, the probate taken after contest is a finality, and cannot be made the subject of repeated contests in that jurisdiction. 14 *Md.,* 532. The fact, therefore, that the appellants were not parties to the proceedings had upon the former caveats to the will can afford no ground for allowing issues to be taken, or proofs to be offered, affecting the validity of the will and the probate thereof.

From what we have said, however, it must not be inferred that parties interested may not impeach the probate for fraud and collusion in obtaining it, and, upon making it clearly to appear that it was so obtained, to have it revoked. The law so abhors fraud that it is tolerated in no form or character of judicial proceeding. " Fraud is an extrinsic, collateral act," says Lord Chief Justice DE GREY, in delivering the opinion in the *Duchess of Kingston's Case,* 2 *Sm. L. Cas.,* (4*th Am. Ed.,*) 508, " which vitiates the most solemn proceedings of Courts of justice. Lord COKE says, it avoids all judicial acts, ecclesiastical or temporal." See 2 *Taylor Ev., sec.* 1522. And that revocation of the probate of a will may be obtained, upon showing fraud or collusion in procuring the probate, though it be taken in solemn form, is abundantly established by authority. 1 *Wms. on Ex'rs,* (3*rd Am. Ed.,*) 473. But in order to procure such revocation, it must be

Worthington, *et al. vs.* Gittings and Worthington, *et al.*

by direct application for that purpose, and the fraud or collusion, with all the particulars, must be distinctly charged, as also the manner in which the Court was misled or imposed on ; and such allegations must be fully and clearly supported by proof. The application must, moreover, be made within a reasonable time after the discovery of the facts that are supposed to establish the fraud ; for if there be any unnecessary or unreasonable delay in making the application, the right to make it will be considered as waived.

· In this case, probate having passed and letters been granted, after contest involving the validity of the will, no further proceeding in the Orphans' Court touching that question can be had, unless the probate were first revoked for fraud or collusion, upon proper proceeding taken for that purpose. And that being so, it follows that the caveat of the appellants to the will was properly dismissed, and the order of the Orphans' Court must therefore be affirmed.

We have not considered the motion to dismiss the appeal. Upon the certificate and deposition of the Register of Wills there would appear to be a question, whether the transcript of the record was made out and ready to be transmitted to this Court in due time, and whether, therefore, the delay in sending up the transcript to this Court was not the fault of the Register rather than that of the appellants. We do not, however, decide the question.

*Order affirmed, with costs.*

(Decided 30th June, 1881.)